See 2 Tidd (Phila. Ed. 1828) 1035, upon St. 43 Geo. III. c. 6, § 5.

---

## Case No. 9,249.

### MASON et al. v. NEWELL et al.

[2 Chi. Leg. News, 1.]

Circuit Court, W. D. Michigan.    1869.

CONTRACTS — INTERPRETATION — DEPENDENT AND INDEPENDENT STIPULATIONS—PLEADING.

[1. N. & Co., lumber dealers, entered into a contract with M. & Co., owners of a sawmill, by which N. & Co. agreed to furnish certain quantities of logs at M. & Co.'s mills, to pay M. & Co. five dollars per thousand for sawing, and to transport the lumber from M. & Co.'s dock. M. & Co. agreed to saw the logs, furnished by N. & Co., in sizes and styles as directed; to handle and pile the lumber in certain ways; to furnish boom-room for the logs; and to provide certain facilities for shipping the lumber, together with other stipulations. Held, that N. & Co.'s promise to pay for sawing the logs was dependent on M. & Co.'s performance of the various stipulations on their part, as to the manner of doing the work, etc., and that M. & Co. could not recover for sawing, without averring, specifically, performance of all such conditions.]

[2. Held, further, that N. & Co.'s agreement to furnish the logs was independent of all that M. & Co. were to do, except to furnish boom-room to receive the logs, and that M. & Co. might recover for a failure to deliver logs, without averring performance of any other stipulations of the contract on their part.]

Assumpsit (Lyman G. Mason and others against Theodore Newell and others) to recover damages for breach of contract. Demurrer to declaration.

Mr. Van Arman and Storrs & Wilson, for plaintiffs.

Judge Higgins and G. V. N. Lothrop, for defendants.

WITHEY, District Judge. So far as it becomes necessary to know the terms of the contract for the purpose of the demurrer, I give the substance of the respective agreements in their natural order, rather than the order written in the instrument.

### Newell, Beaumont & Co.'s Agreements.

1. Newell, Beaumont & Co. are lumber dealers in Chicago, and agree to furnish in the Muskegon river, in time for the spring drive in each year, and deliver to Mason & Co. at their mills in Muskegon, good merchantable pine saw logs, running not more than 4½ to the thousand feet, during the four years succeeding Sept. 13, 1866, sixty-one million feet, board measure; the first year, sixteen million feet, and each of the three subsequent years fifteen million feet.

2. Pay all expenses of running, driving, booming, and delivering said logs at Mason & Co.'s mills, and assort the logs at their own expense, if they require it done, in storage places, which Mason & Co. are to provide.

3. Provide transportation for the lumber from the mill docks as fast as made; and,

4. At no time allow over five hundred thousand feet to accumulate on Mason & Co.'s dock without a further agreement, except near the close of navigation.

5. Pay Mason & Co. for every thousand feet of lumber sawed according to contract five dollars.

6. The price of sawing to be due and payable in the city of Chicago to the order of Mason & Co., on presentation of the certificates of tally and shipping bills of each cargo that may be delivered from Mason & Co.'s dock.

### Mason & Co.'s Agreements.

1. Mason & Co. are owners of mill property in Muskegon, and they agree to run their saw mill to its full capacity during the usual sawing season, running day hours each year for four years, commencing with the season of 1867.

2. Manufacture for Newell, Beaumont & Co., from their said logs, in each said year, fifteen million or more feet of lumber.

3. To manufacture all lumber in a good and workmanlike manner. Such lumber to be sawed by the same gauge as used in 1866. And furnish proper gauge for all styles and kinds of lumber in common use in the Chicago market. Lumber to be cut as directed by N., B. & Co. from time to time, so far as the logs furnished will admit.

4. To handle the upper qualities of lumber with care, and pile separate, as far as practicable. All said lumber to be carefully piled on their docks, separate lengths by themselves, studding, joists, etc., with other dimension stuff, by itself, so that it may be conveniently shipped separate.

5. Furnish all boom-room and attend to receiving the logs in their mill boom, and receipt for the logs as delivered by the Muskegon Booming Co. in their mill boom.

6. Provide suitable pockets or places for storing and assorting logs at their mill.

7. For the convenience of shipping the lumber, they are to extend their dock 150 feet out

into deep water, and furnish a scow, if required to facilitate the shipment of lumber, which scow, when required to be used, is to be loaded by Mason & Co.

8. Take the logs furnished by Newell, Beaumont & Co. at the scale as purchased by them, and guarantee the scale by delivering on their docks the same quantity of lumber, in feet, board measure, as the logs delivered scale.

9. To take duplicate shipping receipts and duplicate certificates of tally for each cargo. Upon presentation of either duplicate or original shipping receipts and certificates of tally, Newell, Beaumont & Co. to pay for sawing at five dollars per thousand feet.

### Mutual Agreements.

The lumber to be tallied at the mutual expense of the parties, at Muskegon, as it goes on board vessels per order of Newell, Beaumont & Co. Culls to be rejected.

There are agreements in the contract not noticed in the above abstract, because not affecting the questions raised by the pleadings. Mason & Co., plaintiffs, have brought suit upon this contract against Newell, Beaumont & Co., defendants, to recover damages for a breach of the contract. The declaration contains six special counts and the common counts. The first count sets out the agreement of the parties in haec verba, avers that the parties entered upon performance of the contract; the defendants delivered logs during the sawing season of 1867 until the 10th of September, and plaintiffs received the logs at their saw mill, and manufactured them into lumber, according to the requirements of the contract, until such time, when the defendants wholly neglected and refused to deliver logs, and still do neglect and refuse. Plaintiffs claim damages for such neglect and refusal of one hundred and fifty thousand dollars. All the other five special counts set out the contract by reference to the first count. The first three counts are quite similar; the last three cover the same ground as the first three, but are more full in their averments and statements of breaches on the part of defendants, claiming to recover for the price of sawing done, as well as damages for not delivering logs. I do not propose, nor do I deem it necessary, to state more fully the substance of the different counts. Performance by plaintiffs, as well as readiness and willingness to perform, are averred generally.

Defendants have filed a demurrer to all the special counts. The first and fourth grounds present objections of most importance, and in reference to which the arguments of counsel were almost exclusively confined. To these I shall first and mainly direct my attention.

The first objection is that there is not sufficient averment that plaintiffs have kept and performed the contract on their part;

and, fourth, that what are defendants' agreements are set out to be independent, when in fact they are dependent; that plaintiffs' promises and undertakings are alleged to be the sole and only consideration for the promises and undertakings of defendants, whereas performance of plaintiffs' promises is the real consideration for defendants' promises. It is quite clear to my mind, that the promise of defendants to pay five dollars per thousand feet for sawing depends upon performance by plaintiffs of their agreement to saw the logs of defendants, handle and pile the lumber, furnish dockage for the convenience of shipping, and a scow to facilitate loading vessels, when needed, according to the terms of the contract, etc. The doing of these things by plaintiffs was the consideration for the defendants' promise to pay; hence, if any of the counts of plaintiffs' declaration are for the recovery of the contract price for sawing, such counts should aver such performance, and also that tally sheets and bills of lading of the cargoes of lumber shipped from plaintiffs' dock were presented to the defendants, etc. Without these averments, plaintiffs could not make the proof upon trial necessary to recover the price of sawing. I am satisfied that there are no sufficient averments of performance in these particulars, and therefore that there can be no recovery in this suit for the price of sawing. But I am equally clear that the first three counts do not state as any part of the cause of action the price of sawing. On the contrary, they go for damages consequent upon the failure to furnish logs to be sawed. These three counts are quite inartificially framed, but are, I think, in the substance sufficient.

The last three counts of the declaration are for the price of sawing and damages for failure to furnish and deliver logs by defendants, and for abandonment of the contract by them without cause or excuse. There can be no recovery under any of these counts for the price of sawing, because of the want of sufficient averments of performance on the part of plaintiffs. There are averments showing the sawing to have been done, but omission to aver performance of other things which are conditions precedent to payment by defendants. It is true that there is the general averment that plaintiffs have done and performed all things by them to be done and performed, according to the requirements of the contract; and, while a general averment of performance is sometimes held to be sufficient, depending upon the nature of the act or thing to be done, I think the rulings are not broad enough to sanction the general averment in a case like the present. It might have been sufficient to have averred that the logs were manufactured into lumber, in all respects as required by the contract, that the lumber thus sawed was handled and piled as required by the contract; that the dock was built within a reasonable

time, or was being built, and that reasonable time had not elapsed for its completion; that a scow was furnished, and that tally sheets and bills of lading of each cargo shipped from plaintiffs' dock were presented to defendants, etc., etc., without specifying as particularly and fully as are the agreements in the contract; but clearly there should have been, what is lacking, to enable plaintiffs to recover for the price of sawing, viz. sufficient averments to inform the court that plaintiffs have fully performed the several things upon which payment depended. Inasmuch, however, as these counts also go for damages occasioned by failure of defendants to deliver the logs which they contracted to deliver, it becomes necessary to consider the fourth ground of objection presented by the demurrer as well as to these as to the first three counts. The question presented by the fourth objection is really this: Are the agreements dependent or independent? Or, to put it in another form, are the promises by one party the consideration for the promises of the other party? Or, as defendants insist, was performance by plaintiffs the consideration for the promises and agreements of defendants? These are but different forms of the same question, so far as regards the objection I am now considering, and to be answered from the evident sense and meaning of the contract; not from anything which has transpired since the agreements were entered into by the parties, but from the provisions of the instrument as it was when it came from the hands of the parties.

Now, I have already said that defendants' agreement to pay for manufacturing the lumber could not be enforced against them, without first averring and proving performance by plaintiffs of their agreement in reference to several things by them to be done and performed, which were covered by, and entered into, the price to be paid by defendants; and hence defendants' agreement to pay was dependent and not an independent agreement. The consideration of that agreement was performance by, and not the promise of plaintiffs to perform on their part. Promise for promise was not the consideration here. But, if this suit has been brought solely to recover, not for the price of manufacturing the logs into lumber, but for not furnishing logs to be manufactured, the question would present an entirely different aspect, and its solution would turn upon other stipulations of the contract than those I have so frequently referred to, and this is the feature of the case to which we now call attention.

Now, Newell, Beaumont & Co. agree to furnish, in the Muskegon river, in time for the spring drive each year, beginning with the lumber season of 1867, and deliver to Mason & Co., at their mill in Muskegon, good merchantable pine saw logs, etc., during the four years succeeding September 13, 1866; the first year, sixteen millions, the second, third,

and fourth years, each fifteen millions feet. Mason & Co. were to provide pocket or storage places, for these logs, from time to time, at their mill, and manufacture them into lumber. When as the logs came down the Muskegon river, with the logs of other lumbermen, occupying, as the whole quantity would, miles of the stream, they were stopped in their progress by the booms of the booming company. Here the logs are mixed indiscriminately. There are many owners of the logs, and many millions of feet, perhaps, owned by each. The booming company, or other party, as soon as logs come down, and the mills are ready to begin sawing, commence to deliver for the respective log-owners logs at the various mills, and this goes on the entire season, till all the logs are sawed into lumber, or until the mills stop sawing. Each mill has pockets or storage places for receiving from day to day the logs which are delivered from the booming company's booms. But a small portion of what are to be sawed during the season are at any one time at any mill; and the pockets or storage at the mills are required to be no larger than to contain such quantity of logs as prudence would dictate to ensure a supply in view of their constant or almost daily delivery in small rafts. Now, it is evident that the first thing to be done under this contract by anybody was furnishing and delivering logs by Newell, Beaumont & Co. to plaintiffs, unless possibly that the pockets or storage places were to be provided by Mason & Co. preparatory to the logs being delivered at their mill. The next thing to be done was the sawing of these logs into lumber by Mason & Co., and it is perfectly plain that there could be no sawing by the latter until the logs were in part delivered. How can it be claimed, then, that sawing on the logs was a condition precedent to delivering them? How can it be maintained that the delivery of logs depended on the sawing being done? How does it appear that performance by plaintiffs of their agreement to saw and do the several other things, dependent upon getting pay for sawing, was the consideration for the defendants' promise to deliver logs?

I have asked myself these questions, and I have turned to the contract for answers, and looking to the intention of the parties, by what they have said in that instrument, cannot escape the conclusion that no such claim can be maintained. On the contrary, Newell, Beaumont & Co. agreed to deliver logs, and the performance of that promise depended upon nothing to be done by Mason & Co. except providing, at their mill, storage. And this undertaking to deliver logs runs through the entire period of the contract.

Let us test this particular agreement. Suppose Newell, Beaumont & Co. had never delivered any logs under the contract,—had done nothing,—and for this failure Mason & Co. bring suits, claiming damages for the non-delivery of logs. Would it be necessary

that Mason & Co. should aver that they had sawed the logs, or had done any other act or performance of their agreement beyond having provided storage, boom-room, and being ready and willing to receive the logs, and manufacture them into lumber, and to do and perform the contract on their part to be done? Clearly not. If Newell & Co. delivered logs to the mill, and no storage was provided, that fact would excuse them from further delivery, no doubt; but that aspect of the case is not presented, nor is the question, what failures would justify an abandonment? What had Mason & Co. to do, which must necessarily precede the delivery of the logs? Nothing, unless providing storage and boom-room. Hence performance by Mason & Co. of their agreement to saw, etc., cannot be regarded as the consideration for Newell & Co.'s promises. Now, if such is the contract at the outset, nothing subsequent is to be allowed to change the construction of it, except the agreement of the parties. And there has been no change by agreement. I have no doubt as to the character of this particular agreement by Newell, Beaumont & Co. to deliver logs. It is independent of any and everything which Mason & Co. are to do, except possibly providing storage and boom-room at their mill.

If Newell, Beaumont & Co. had incorporated into their agreement to deliver logs that such delivery from time to time was to depend upon Mason & Co., at all times during the life of the contract, manufacturing such logs into good merchantable lumber, piling and assorting the lumber, building a dock and furnishing a scow to facilitate shipment of such lumber, then there would be no doubt but after commencing to deliver logs, a default by Mason & Co. would release Newell, Beaumont & Co. for further obligations. And Mason & Co. would be obliged, in an action for not delivering logs, to both aver and prove performance of all those conditions.

I need not discuss this topic further, nor need I refer to and review the many authorities cited by counsel for defendants. I have examined them as far as I have had access to the volumes referred to, and find nothing which in the slightest affects the views expressed. The first and every other count, among other things, avers general performance by plaintiffs of all things on their part to be done and performed according to the terms and stipulations of the contract, and that they have been and still are ready to receive the logs of defendants, and manufacture the same into lumber, according to the conditions of the contract. Some of the counts aver that "they were ready, able and willing, and fully prepared to receive from defendants, and to manufacture into lumber, in a skillful and workmanlike manner, the entire amount of logs." These averments I regard as sufficient allegation that storage places were provided at plaintiffs' mill, if we are to regard their agreement in that respect a condition precedent to the delivery of logs. When plaintiffs say they were at all times ready to receive defendants' logs, or ready, willing, and fully prepared to receive them, it is equivalent to saying that pockets of storage places were provided. although it would be better to state specifically that pockets of storage were provided, and also boom-room. At the same time I am quite satisfied that the general averment of performance by plaintiffs is not sufficient to permit a recovery for the price of sawing, because, as before indicated, when several things are to be performed, which are conditions precedent to the right to exact payment, the averment must be sufficiently full and particular to advise the court that each and every of such acts have been performed, and yet I regard the court advised in reference to storage places at the mill having been prepared.

The first and fourth grounds of demurrer are, nevertheless, regarded as well taken to the last three or amended counts; the fourth ground, because these counts state that the promise of the plaintiffs to perform, on their part, constituted the consideration for defendants' promises, and that the promises of defendants constitute and were the sole and only consideration for the promises of plaintiffs. I regard nearly all the agreements of the contract dependent. The only serious doubt I have in reference to any of the agreements which I have particularly called attention to is that of defendants to deliver logs. And the doubt has been whether Mason & Co.'s agreement to provide pockets, storage, and boom-room is a condition precedent. I am inclined to allow that it is such, and, this being so, there is no doubt as Newell & Co.'s other agreements, to which I have referred, being dependent on performance by Mason & Co.; and so Mason & Co.'s agreement to saw, etc., being dependent on Newell, Beaumont & Co.'s furnishing logs to saw; hence the fourth ground of demurrer is sustained in reference to the three amended counts. The first ground of demurrer is well taken, because the counts present, as one of the causes of action, the price for sawing manufactured lumber, without averring performances, sufficiently of the various acts and things by them to be done and performed, as I have already indicated the rule to require. The second ground of demurrer, which is for inconsistent and repugnant averments in the different counts, is not sustained. The third ground is general, and need not be noticed.

The result is that the first three counts, though inartificially drafted, are regarded as not open to the objections of the demurrer. Whether they will serve the plaintiffs' purpose upon a trial is for them to determine. The last three amended counts are open to the objections presented by the first and fourth grounds of demurrer. What I allude to as the fourth ground of demurrer is the amendment made to the original cause of demurrer. The plaintiffs have leave to further amend

their declaration at any time within thirty days. The demurrant is allowed costs of the motion, including $50 attorney fee.